# United States District Court

_____ **MIDDLE** _____ DISTRICT OF _____ **ALABAMA** _____

| | |
|---|---|
| **In the matter of the Search of**<br>(Name, address or brief description of person, property<br>or premises to be searched) | **APPLICATION AND AFFIDAVIT<br>FOR SEARCH WARRANT**<br><br>CASE NUMBER: 2:06mj120-DRB |

**15 May Street,<br>Montgomery, AL 36108 and<br>5121 Short Leaf Pine Drive,<br>Montgomery, AL 36116**

I __John B. Hamilton__ being duly sworn depose and say:

I am a(n) __Drug Enforcement Administration Special Agent__ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**15 May Street, Montgomery, AL 36108<br>and<br>5121 Short Leaf Pine Drive, Montgomery, AL 36116**

in the __Middle__ District of __Alabama__

there is now concealed a certain person or property, namely (describe the person or property to be seized)

**See Attachment A**

which is contraband, the fruits and instruments of a crime; evidence of a crime and things otherwise criminally

possessed concerning a violation of Title __21__ United States Code, Section(s) __841(a)(1).__

The facts to support the issuance of a Search Warrant are as follows:

**See Attached Affidavit Which is Incorporated by Reference Herein**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____<br>Signature of Affiant

Sworn to before me and subscribed in my presence,

October 20, 2006                    19:00 a.m.              at    Montgomery, Alabama
_____
Date                                                                             City and State

Vanzetta P. McPherson, U.S. Magistrate Judge              _____
Name and Title of Judicial Officer                                       Signature of Judicial Officer

## ATTACHMENT A

<u>Property to be Seized</u>

1. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing, and distribution of controlled substances, in particular, cocaine and cocaine base, Schedule II controlled substances;

2. Books, records, receipts, bank statements, and wire transfer records, money drafts, letter of credit, money orders and cashier's checks, receipts, pass books, bank checks, safety deposit box keys, and other items evidencing the obtaining, secreting, transferring, and/or concealing of assets and the obtaining, secreting, transferring, concealing, and/or expending of money;

3. Financial proceeds of trafficking in cocaine and cocaine base, namely United States Currency;

4. Photographs, in particular photographs of co-conspirators, video tapes of assets and/or of controlled substances, in particular cocaine and cocaine base;

5. Indices of occupancy and residency, and/or ownership of the premises described in the affidavit, including but not limited to, utility and telephone bills, canceled envelopes, and safety deposit box keys;

6. Cocaine and cocaine base;

7. Documents concerning motor vehicle ( the term motor vehicle also includes but is not limited to watercraft, boats, and aircraft) registration and title transfers, including but not limited to bills of sale, tag receipts, titles, leases and lease options to purchase vehicles;

8. Tickets, ticket stubs, and itineraries pertaining to travel by common carrier including but not limited to airlines, rail, and bus;

9. Purchase journals, disbursement journals, sales journals, billings, or invoices;

10. Records of the purchase of cashier's checks, money orders, bank drafts, or other monetary instruments;

11. Lists of clients, employees, names, addresses, and/or telephone numbers;

12. Files, deeds, titles, rental agreements, bills, bills of sale, payment records, contracts, internal correspondence, external correspondence, memorandums, notes, indicia of ownership, and records regarding the purchase, lease, rent, sale and/ or ownership of real or personal property;

13. Paging devices, and answering machine tapes;

14. Computer diskettes, and computer printouts;

15. Records of safe deposit boxes;

16. Records of certificates of deposit, stocks, and bonds;

17. Firearms, ammunition, ammunition clips and magazines, holsters, firearms records, firearms transfer records, paraphernalia used to maintain firearms;

18. Jewelry, precious metals, and coins.

All the above being fruits, instrumentalities, and evidence of violation of Title 21 U.S.C. § 846, and Title 18 U.S.C. § 1956.

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, John Bret Hamilton, a Special Agent of the Drug Enforcement Administration, United States Department of Justice, being duly sworn, deposes and states the following:

APPLYING OFFICER

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code. I am empowered by law to conduct investigations of and to make arrests for the offenses enumerated in Section 2515, Title 18, United States Code.

2. For approximately eleven (11) years I have been so employed as a Special Agent of the DEA. Since that time, I have participated in investigations involving organized crime and narcotics activities. I, along with members of the investigative team I work with have received specialized training in identifying and investigating narcotics distribution enterprises and their related criminal activities, including monetary and asset laundering. I, along with members of the investigative team I work with have participated in all or parts of a number of such investigations. Members of the investigative team I work with have gained investigative specialization in the area of methamphetamine, cocaine, marijuana, and/or polydrug conspiracies. I, along with members of the investigative team have received in service continuing professional education in this area of law enforcement and review agency and other publications to stay abreast of developments in this field of law enforcement.

3. My training and participation in investigations of narcotics traffickers and others involved in illegal businesses and activities have given me knowledge to recognize the methods used by narcotics traffickers and money launderers to conceal their assets, income and activities from the government and other third parties. Based on my training and experience, I know the following:

(a) that drug traffickers generate tremendous profits from these illegal activities. These individuals attempt to hide their illegal activities to avoid detection by law enforcement agencies;

(b) that drug traffickers often place assets, purchased by them, in names other than their own to avoid detection of these assets by law enforcement agencies;

(c) that even though these assets may be in other persons' names, the drug traffickers continue to use these assets and exercise control over them;

(d) that drug traffickers must maintain large amounts of currency and/or controlled substances readily accessible to them in order to maintain and finance their ongoing illegal activities;

(e) that drug traffickers maintain books, records, receipts, bank statements and records, money drafts, letters of credit, money orders, cashier's checks, documents relating to safety deposit boxes, and other documents and audio and video tape recordings evidencing the acquisition, secreting, transfer, and concealment of assets and currency. These records are maintained at a place such as a residence, business, and safety deposit box where the individual has ready access to these documents and they are concealed from law enforcement authorities;

(f) that drug traffickers commonly "front" (provide illegal controlled substances on consignment) to their clients. That books, records, receipts, handwritten notes, ledgers, and audio and video tape recordings are maintained for the purpose of documenting fronted controlled substances to these individuals. These records are maintained at a residence, business, or safety deposit box where the individual has ready access to these documents and they are concealed from law enforcement authorities;

(g) when drug traffickers accumulate profits from the sale of these drugs, they frequently try to legitimize those profits. In order to accomplish this,

2

they utilize foreign and domestic banks, accounting firms, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate and business fronts;

(h)  that drug traffickers commonly maintain addresses or telephone numbers and books or papers which reflect names, addresses and/or telephone numbers of their associates and clients in their drug trafficking activities and that they maintain these records at their residence, the residence of relatives, the residence of a girlfriend, business, or in a safety deposit box where they are concealed from law enforcement authorities;

(i) that drug traffickers maintain safety deposit boxes as a place to store the large amounts of currency generated through the sale of illegal drugs. Safety deposit boxes are used because the individual has ready access to the contents of these boxes and the contents are concealed from law enforcement authorities including the Internal Revenue Service;

(j) that drug traffickers purchase and maintain caches of precious metals, jewelry and other items of value relating to obtaining, transferring, secreting or spending large sums of money made from engaging in drug trafficking activities at their residence, business, automobiles, storage buildings and safety deposit boxes;

(k) that drug traffickers frequently take or cause to be taken photographs or videotapes of themselves, their associates, their properties, and their contraband and that these traffickers maintain these photographs or videotapes at their residence, business, and safety deposit box;

(l) that drug traffickers attempt to conceal their methods of travel by using false names and identification;

(m) that drug traffickers attempt to conceal their methods of communications and contacts with associates (use of telephones or other communication devices);

3

(n) that drug traffickers often use scanners, and electronic equipment for communication and detection of transmitters and recorders;

(o) that drug traffickers maintain firearms which are readily accessible for use as protection of the trafficker, his cash or other valuables, and drugs, and for use during and in relation to drug trafficking, and that Federal courts have consistently recognized firearms as "tools of the trade" of drug trafficking;

4. Presently, I am part of a team of highly experienced narcotics and law enforcement agents/officers. This team has been investigating the criminal activities committed by a narcotics organization that the investigative team has identified as operating in violation of Title 21, U.S.C. Section 841, 843(b), and 846 and other statutes.

## INTRODUCTION

5. This affidavit is submitted in support of an application for the issuance of a search warrant for 15 May Street, Montgomery, Alabama, which is located in Montgomery County. It is my opinion and the opinion of the investigative team as experienced, trained narcotics investigators, there exists probable cause to believe that evidence will be found in violation(s) of 21 U.S.C. 841 and 846 (possession with intent to distribute/distribution of controlled substances, and/or conspiracy to do so): of 21 U.S.C. 843(b) (unlawful use of a communications facility to distribute cocaine. The violations have been committed by persons known and as yet unknown to the investigators.

6. Cocaine hcl (also referred to as powder cocaine) and cocaine base (also referred to as crack cocaine) are the drugs that are the primary focus of this investigation. Based on information supplied by the confidential sources, as well as the analysis of the information generated by the investigators to date, it is conservatively estimated that the known members of the enterprise are directly responsible for supplying large quantities of cocaine

4

hcl and cocaine base to distributors and abusers in the Montgomery, AL and surrounding areas. Confidential source information received as recently as the date of this affidavit has revealed that the organization is continuing to traffic in cocaine hcl and cocaine base.

7. Since this affidavit is being submitted for the limited purpose of securing authorization for the acquisition of a search warrant for the listed location, I have set forth only the facts that I believe provide a necessary foundation for the issuance of the search warrant for the listed and described location.

8. The statements contained in this affidavit are based in part on reports provided by Special Agents of the Drug Enforcement Administration, on reports and conversations with detectives and officers who work within Montgomery County and on information provided by reliable confidential sources of information, on conversations intercepted through lawfully authorized electronic surveillance and the background of the members of the investigative team.

CURRENT INVESTIGATION

9. On September 20, 2006 SA'S JB Hamilton and Neill Thompson and TFO's Scott Edwards and Eddie Spivey met with CS-06-123738 (hereafter referred to as CI-1) and CS-05-119603 (hereafter referred to as CI-2). The purpose of the meeting was to arrange an undercover purchase of cocaine from Timothy GOODSON.

10. SA Hamilton and TFO's Spivey and Edwards searched both CS-1 and CS-2 and their vehicle for drugs, weapons, large sums of money and other contraband with negative results. CS-1 was provided a video and audio recording device and $400.00 of Official Advanced Funds (OAF). CS-1 and CS-2 left the meet location with CS-2 driving and were followed by SA's Hamilton, Thompson and TFO's Spivey and Edwards.

11. CS-1 and CS-2 parked at the Family Dollar Store parking lot at the corner of Bell and May Streets. CS-1 then walked to Westside Tires located at 15 May Street, Montgomery, AL and CS-2 remained in the vehicle. Via the transmitter/recorder, CS-1 could be seen approaching GOODSON who was working on a vehicle. After CS-1 told GOODSON what he/she wanted to purchase, CS-1 and GOODSON walked to a back room of GOODSON'S shop where GOODSON explained that he only had powder cocaine. GOODSON then gave CS-1 a small bag of suspected cocaine hcl and CS-1 paid GOODSON one-hundred dollars.

12. At approximately 2:26 PM CS-1 left 15 May Street and walked back to the parking lot where CS-2 was waiting. CS-1 and CS-2 then met with SA's Hamilton and Thompson and TFO's Spivey and Edwards. CS-1 and CS-2 were searched again, with negative results. CS-1 turned over a plastic bag containing the suspected cocaine hcl, which was field tested and indicated positive for the presence of cocaine. CS-1 stated that GOODSON told him/her that all he (GOODSON) had was powder cocaine. The CS returned $300.00 OAF that was unused.

13. On September 22, 2006 SA'S JB Hamilton and Neill Thompson and TFO Eddie Spivey met with CI-1 and CI-2 again. The purpose of this meeting was to arrange an undercover purchase of cocaine base from GOODSON. CS-1 was instructed to call GOODSON'S cell phone (334)651-4003 and ensure that GOODSON would be at his shop, Westside Tire located at 15 May Street, Montgomery, AL. GOODSON answered the phone and spoke with the CS regarding the drugs he (GOODSON) had. After the phone call, CS-1 was provided a video and audio recording device and $800.00 of Official Advanced Funds (OAF).

14. SA Hamilton and TFO Spivey searched both CS-1 and CS-2 and their vehicle for drugs, weapons, large sums of money and other contraband with negative results. CS-1 and CS-2 were again followed to the corner of Bell and May Streets. CS-1 then walked to 15 May Street and CS-2 remained in the vehicle. Via the transmitter/recorder, CS-1 could be seen approaching

6

GOODSON. After CS-1 told GOODSON what he/she wanted to purchase, GOODSON told CS-1 that he only had powder cocaine then gave CS-1 a small bag of suspected cocaine hcl and CS-1 paid GOODSON five-hundred dollars. GOODSON also told CS-1 that he would have cocaine base later in the day and that he/she (CS-1) should return then.

15. CS-1 then left 15 May Street and walked back to the parking lot where CS-2 was waiting. CS-1 and CS-2 then met with again and were searched with negative results. CS-1 turned over a plastic bag containing the suspected cocaine hcl to SA Hamilton. CS-1 said that GOODSON told him/her to return later in the day to purchase cocaine base. The CS returned $300.00 OAF that was unused.

16. Based on the earlier conversation between CS-1 and GOODSON, agents decided to meet with CS-1 and CS-2 again at approximately 4:40 PM on the same day. CS-1 was again instructed to call GOODSON'S cell phone, (334)651-4003, to ensure GOODSON had the cocaine base. GOODSON answered the phone and spoke with CS-1 about the crack cocaine and indicated that he (GOODSON) had it. CS-1 was again provided with a video and audio recording device and $1,100.00 of Official Advanced Funds (OAF). Agents searched both CS-1 and CS-2 and their vehicle for drugs, weapons, large sums of money and other contraband with negative results. Agents followed CS-1 and CS-2 again to the corner of Bell and May Streets and CS-1 then walked to 15 May Street as CS-2 waited in the vehicle.

17. Via the transmitter/recorder, CS-1 could be seen approaching GOODSON. CS-1 informed GOODSON that he/she wished to purchase one ounce of cocaine base for someone else and an eighth of an ounce for himself/herself. GOODSON then gave CS-1 one small bag and one larger bag, both containing suspected cocaine base. CS-1 then paid GOODSON $1,100.00 of OAF.

18. CS-1 left Westside Tire and walked back to where CS-2 was waiting and both drove back to the prearranged meeting location where they met with SA's Hamilton and Thompson and TFO Spivey again. CS-1 and CS-2 were searched, with negative results and CS-1 turned over two plastic bags containing the suspected cocaine base which was field tested and indicated positive for the presence of cocaine.

19. On 09-25-2006, Alabama Power Company was served with an administrative subpoena. The subpoena requested current subscriber, billing and any other information listed on the application for power for 5121 Short Leaf Pine Drive, Montgomery, AL 36116. Alabama Power Company records show that Timothy GOODSON, SSN: 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 and Cathy Lorraine GOODSON, SSN: 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 have had service at 5121 Short Leaf Pine Drive, Montgomery, AL 36116 since 2002.

20. On 10-12-2006, Nextel Communications was served with an administrative subpoena. The subpoena requested current subscriber information and account history for cellular telephone number (334)651-4003, which is the telephone number CS-1 called to arrange the controlled buys. Nextel Communications records show that cellular telephone number (334)651-4003 is billed to Timmy GOODSON at 5121 Short Leaf Pine Drive, Montgomery, AL 36116. The account was established on 02-04-2006 and various Visa and American Express credit cards have been used to pay the bill. Records show that the account status is active and the serial number for the assigned phone is 000825458839310.

21. Based on my investigation and my discussions with other law enforcement agents, and the CS, as set forth above, I have probable cause to believe that Timothy GOODSON is engaged in drug trafficking as set out above and that GOODSON is utilizing the business located at 15 May Street, Montgomery, Alabama, also known as Westside Tire, in furtherance of his drug activity. I further believe the cellular telephone and telephone bills may be found at 15 May Street, Montgomery, Alabama and 5121 Short Leaf Pine Drive, Montgomery, Alabama.

22. Wherefore, your affiant respectfully requests of the Court based upon the facts and circumstances set forth herein and incorporated herein by reference, that probable cause be found to exist such that the crimes alleged herein has been and/or are being committed by GOODSON and others in concert with him within the business described above. I further request that the court find that there is probable cause to believe that the property described in the Property to be Seized (Attachment 2) to this Affidavit for Search Warrant and any and all other material evidence of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 853, 881, will be located at that location.

John Bret Hamilton, Special Agent
Drug Enforcement Administration
Affiant

Sworn to and subscribed by me
this the 20th day of October, 2006.

Vanzetta P. McPherson
United States Magistrate Judge

9